IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| GORDON ROUNTREE MOTORS, LTD., | § § | |
|     Plaintiff, | § § | CIVIL ACTION NO. W-06-CA-251 |
| v. | § § | |
| MAZDA MOTOR OF AMERICA, INC., D/B/A MAZDA NORTH AMERICAN OPERATIONS, RON STACH, JOHN MELIN, AND DENISE HUSAK, | § § § § § | |
|     Defendants. | § § | |

## ORDER

Before the Court is Plaintiff's Motion to Stay. Plaintiff Gordon Rountree Motors, Ltd. ("Rountree") requests this case be stayed based on the judicially-created primary jurisdiction doctrine. Defendant Mazda Motor of America, Inc. ("Mazda") is opposed. Having reviewed the Motion, Response, Reply, Sur-Reply, Response to Sur-Reply, pleadings, and applicable legal authority, the Court finds the Motion has merit and should be granted.

### I. BACKGROUND

Rountree's allegations arise from its failed attempt in 2004 to purchase the Mazda dealership in Waco from Beasley-Wilson, Inc. In early 2004, Rountree, WLM Automotive, Inc. ("WLM"), Rogers Wilson ("Wilson"), Gary Leverenz ("Leverenz"), and Beasley-Wilson executed a Stock Purchase Agreement, wherein Wilson and Leverenz agreed to sell and Rountree agreed to buy 100% of the common stock and

certain real estate of Beasley-Wilson and WLM. As a condition to the sale, Mazda had to approve Rountree as a franchise dealer. Beasley-Wilson applied for approval of the franchise transfer on three occasions and they were all denied. The third denial was denied by a letter sent to Beasley-Wilson on August 27, 2004 from Ron Stach, the Mazda Region Operations Manager. This letter, as required by the Texas Occupations Code § 2301.329(d), states Mazda's reasons for the denial including inadequate financial and business qualifications. The Stock Purchase Agreement between Beasley-Wilson, WLM and Rountree was subsequently terminated.

Rountree filed suit, on or about August 24, 2006, against Mazda and other named Defendants, asserting several common law tort causes of action, including tortious interference with a contract. Rountree claims that Mazda acted illegally by unreasonably denying Rountree's application in direct violation of section 2301.359 of the Texas Occupations Code. Mazda responded asserting the affirmative defense of legal privilege and justification.

Rountree argues that Mazda's illegal acts (*i.e.*, alleged violation of Tex. Occ. Code Ann. § 2301.359) cannot form the basis of a legal privilege and justification defense. Rountree has filed a Motion to Stay arguing that the Texas Supreme Court has held that the Texas Department of Transportation, Motor Vehicle Division (the "Division") has primary jurisdiction to determine code construction issues involving Chapter 2301 of the Texas Occupations Code, including whether a manufacturer violated § 2301.359 in denying an application to transfer a car dealership. *See*

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002). Rountree requests that the Court abate the present suit until such time as the Division has had a reasonable opportunity to exercise its primary jurisdiction in deciding whether Mazda violated Chapter 2301.

## II. LEGAL AUTHORITY

### A. Primary Jurisdiction

Primary jurisdiction "allocate[s] power between courts and agencies when both have authority to make initial determinations in a dispute." *Subaru of Am. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002). Under Texas law, trial courts should defer to appropriate administrative agencies when (1) the agency is staffed with experts trained in handling complex problems within the agency's purview, and (2) great benefit is derived from the agency's uniform interpretation of laws within its purview and the agency's rules and regulations when courts and juries might reach differing results under similar fact situations. *In re Southwestern Bell Telephone Co., L.P.*, 226 S.W.3d 400, 403 (Tex. 2007). The primary jurisdiction doctrine does not require trial courts abate if the matter at issue does not require resolution of technical and intricate factual matters. *See Cash America Int'l Inc. v. Bennett*, 35 S.W.3d 12, 18-19 (Tex. 2000). The Fifth Circuit has stated:

> Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the action by an administrative agency. The doctrine is invoked:

> "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views."

> It is a flexible doctrine to be applied at the discretion of the district court. Application of the doctrine is especially appropriate where:

> "uniformity of certain types of administrative decisions is desirable, or where there is a need for the 'expert and specialized knowledge of the agencies.'"

> A court considering deferring to an agency's primary jurisdiction must weigh the benefits of obtaining the agency's aid against the need to resolve the litigation expeditiously and may defer only if the benefits of agency review exceed the costs imposed on the parties.

*Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988) (citations omitted).

The Texas Supreme Court has recognized that primary jurisdiction can be waived if there is unexplained and prejudicial delay by the movant in asserting the primary jurisdiction issue and if the movant substantially invoked the litigation process to the non-movant's prejudice. *Southwestern Bell*, 226 S.W.3d at 405. Delay alone does not generally establish waiver. *Id.*

## B. Texas Occupations Code

Section 2301.151 of the Texas Occupations Code provides:

> (a) The board [Division] has the exclusive original jurisdiction to regulate those aspects of the distribution, sale, or lease of motor vehicles that are governed by this chapter, including the original jurisdiction to determine its own jurisdiction.

> (b) The board may take any action that is specifically designated or implied under this chapter or that is necessary or convenient to the exercise of the power and jurisdiction granted under Subsection (a).

Tex. Occ. Code Ann. § 2301.151.  Section 2301.359 states:

> A manufacturer or distributor may not unreasonably withhold approval of an application filed under Subsection (a). It is unreasonable for a manufacturer or distributor to reject a prospective transferee who is of good moral character and who meets the written, reasonable, and uniformly applied standards or qualifications, if any, of the manufacturer or distributor relating to the prospective transferee's business experience and financial qualifications.

Tex. Occ. Code Ann. § 2301.359(e).  The other provisions in section 2301.359 relate to notice of the dealer's decision.  Section 2301.360 states:

> (a) A dealer whose application is rejected under Section 2301.359 may file a protest with the board. A protest filed under this section is a contested case.
>
> (b) In a protest under this section, the board must determine whether the prospective transferee is qualified. The burden is on the manufacturer or distributor to prove that the prospective transferee is not qualified. The board shall enter an order holding that the prospective transferee either is qualified or is not qualified.
>
> (c) If the board's order is that the prospective transferee is qualified, the dealer's franchise is amended to reflect the change in franchisee, and the manufacturer or distributor shall accept the transfer for all purposes.
>
> (d) If the board's order is that the prospective transferee is not qualified, the board may include in the order:
>
>> (1) specific reasons why the prospective transferee is not qualified; and
>>
>> (2) specific conditions under which the prospective transferee would be qualified.

> (e) If the board's order that a prospective transferee is not qualified includes specific conditions under which the prospective transferee would be qualified, the board may retain jurisdiction of the dispute for a time certain to allow the dealer and prospective transferee to meet the conditions.

Tex. Occ. Code Ann. § 2301.360.

## C. *Butnaru v. Ford Motor Co.*

In *Butnaru*, a Ford dealer agreed to sell its dealership to the Butnarus. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 201 (Tex. 2002). The dealers' agreement with the manufacturer, Ford Motor Company, gave Ford a right of first refusal to purchase the dealership on the same terms and conditions as the Butnarus, regardless of whether they were qualified to be a Ford dealer. *Id.* Ford exercised its right of first refusal, and the Butuarus sued Ford for tortious inference with a contract. *Id.* The Butnarus alleged that Ford's right of first refusal violated section 5.01B of the former Texas Motor Vehicle Commission Code that prohibited a manufacturer from denying or preventing the sale of a dealership to a "qualified" applicant.[1] *Id.* The Butnarus further sought a declaration that Ford's right of first refusal was unenforceable. *Id.* Ford filed a plea in abatement arguing that the Motor Vehicle Board had exclusive jurisdiction to decide whether it had violated the Code. *Id.* The Court first held that the Board did not have exclusive jurisdiction over the tortious interference and declaratory judgment claims. *Id.* at 207. The Court stated:

---

[1] The provisions of section 5.01B are now found in sections 2301.359 and 2301.360 of the Texas Occupations Code.

> [N]o Code provision extends the Board's exclusive jurisdiction to resolving the Butnarus' tortious interference and declaratory judgment claims so that they must exhaust any administrative remedies before seeking judicial relief. In fact, the Code's failing to establish any procedure through which the Board may resolve a prospective transferee's claim that a manufacturer unlawfully refused to accept a dealer's transfer request -- coupled with the Board's inability to award monetary damages -- demonstrate the contrary. . . . [B]ecause the Code does not indicate the Legislature's intent to replace the prospective transferees' remedies here, the Butnarus do not have to exhaust any administrative remedies before suing Ford for tortious interference or declaratory relief.

*Id.* at 207-08.   The Court then considered whether primary jurisdiction was applicable to the Code construction issue in the case.  The Court stated:

> We conclude that the primary jurisdiction doctrine applies in this case. The Butnarus' tortious interference and declaratory judgment claims raise a Code construction issue that is within the Board's special competence and expertise.  As discussed above, the Legislature has specifically authorized the Board to resolve disputes between a manufacturer and dealer when the dealer alleges that the manufacturer violated section 5.01B by unreasonably withholding consent to transfer a dealership. The Board's expertise in construing section 5.01B in these disputes, and the State's interest in a uniform interpretation of the Code, requires the trial court to abate the lawsuit and suspend finally adjudicating the tortious interference and declaratory judgment claims until the Board has a reasonable opportunity to act on the matter. Accordingly, the trial court should abate the claims pending the Board having an opportunity to exercise its primary jurisdiction to determine, at least in the first instance, whether a right of first refusal violates the Code.

*Id.* at 208-09 (citations omitted).

### III. ARGUMENTS

Relying on *Butnaru*, Rountree asserts that the issue of whether Mazda violated

Section 2301.359 of the Texas Occupations Code is an issue that falls squarely within the primary jurisdiction of the Division.  Rountree argues that its tortious interference claims, and Defendant's assertion of legal privilege or justification defense, raises a Code construction issue that is within the Division's special competence and expertise.  Thus, Rountree asserts the Division should be given a reasonable opportunity to exercise its jurisdiction and make a determination on that issue.

    Mazda first argues that Rountree waived any right to invoke primary jurisdiction in the Division.  Rountree waited over two years before taking any action regarding Mazda's initial denial, and then chose to invoke the judicial process.  Rountree then waited another year before seeking to stay the litigation by invoking the administrative remedy.  Thus, Rountree waited three years before asking for administrative relief.  Having been in the dealership business for 40 years and as a member of the Texas Automobile Dealers Association, Mazda argues that Rountree should have been well aware of the administrative protest process long before it filed suit.  In fact, the Beasley-Wilson general manager testified that at the time of the denial, Rountree discussed with him and the Texas Automobile Dealers Association a possible administrative protest in 2004.  Further, in Rountree's admissions during discovery, it admits that it is not aware of any administrative action filed or pending before the Texas Motor Vehicle Division.  Mazda argues that Rountree has clearly invoked the litigation process having engaged in discovery and motion practice.

Under the Texas Occupations Code, if a transfer is found to be unreasonably denied, the remedy is specific performance (*i.e.*, the transfer is given effect and the new dealer is established). Tex. Occ. Code Ann. § 2301.360. However, Rountree seeks money damages in this litigation. Mazda asserts that had Rountree or Beasley-Wilson sought an administrative remedy in 2004 immediately after denial of the transfer, it would not have been subject to money damages. Mazda argues that Rountree should not be awarded for its delay and failure to mitigate its damages by being allowed to pursue an action that, if originally filed, would preclude the money damages it now seeks. In addition, Mazda argues that it would be further prejudiced by the substantial time and resources spent defending this lawsuit for the past year.[2]

Mazda further argues that this case is not appropriate for the Division. The issue Rountree proposes to submit to the Division is essentially whether Mazda was "unreasonable" in denying Rountree's application. Mazda's alleged reasons for denial were that Rountree did not have in place acquisition financing and it's floor plan financing was contingent on a separate transaction that had yet to be put in writing. Even assuming reasonable minds could differ on this question, Mazda argues that it does not involve highly technical facts that only a specialized agency can assess. *See Cash America*, 35 S.W.3d at 18-19. Next, Mazda notes that the

---

[2] This includes ten depositions, the maximum number of interrogatories and requests for admission under the Rules, and the production of thousands of pages of documents in response to Plaintiff's 100-plus requests for production. The parties have also filed dispositive motions.

9

case *General Motors Corp. v. Bray*, No. 03-06-00766-CV, 2007 Tex. App. LEXIS 6603 (Tex. App.—Austin, August 16, 2007) is an illustration that the Division may not have the special expertise and competence in Code construction issues. In *General Motors*, the Austin Court of Appeals expressly found statutory-construction error by the Division of section 2301.359 and held that a manufacturer satisfies this section simply by not being unreasonable. 2007 Tex. App. LEXIS 6603, at *17-19. The Court held that nothing in the statute requires manufacturers to have "written, reasonable, and uniformly applied standards relating to business experience and financial qualifications" in order to reasonably deny a transfer applicant with good moral character. *Id.* at *17-18. The Court remanded the case for the Division to determine whether the manufacturer unreasonably denied the transfer application using the construction of the statute set forth by the Court. *Id.* at *19. In addition, Mazda notes that the Austin Court of Appeals recognized that "[a]lthough the supreme court has decided that the board must have a 'reasonable opportunity' to exercise its primary jurisdiction on the matter even though it is powerless to grant the relief sought, . . ., it has not clarified what procedures the Board may use to exercise such jurisdiction." *Ford Motor Co. v. Butnaru*, 157 S.W.3d 142, 148 (Tex. App.—Austin 2005, no pet) (hereinafter "*Butnaru II*").

Mazda further asserts that there are no longer any administrative law judges

("ALJs") at the Division that have dealt with the issues presented by this case.[3] Mazda asserts that neither *Butnaru* or *Butnaru II* force the Division to accept claims by prospective dealers—the Board must have a "reasonable opportunity" to exercise its primary jurisdiction on the matter. *Butnaru II*, 157 S.W.3d at 148-50. The issue Rountree proposes to submit is whether Mazda was "unreasonable" in denying Plaintiff's application, which Mazda argues the Division does not have any special expertise to support a deferral to the Division.

Lastly, Mazda argues that staying this litigation would be inefficient and cause undue delay. Mazda asserts that if the Court balances any advantages of applying the primary jurisdiction doctrine against the potential costs resulting from complications and delay in the administrative process, it should not defer to the Division. *See Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 419 (5th Cir. 1976). Mazda also notes that any ruling by the Division would not be binding against the individual Defendants; thus, the Court would have to revisit those issues again as to those Defendants.

---

[3] As of September 1, 2007, House Bill 3601 took effect, modifying Texas Occupations Code § 2301.607(c), § 2301.704, and § 2301.709(a) by replacing the former ALJs employed by the Division with ALJs that are employed by the State Office of Administrative Hearings ("SOAH") who Mazda alleges have not previously handled these disputes. *See* TEX. H.B. 3601, 80TH LEG., R.S. (2007). These new ALJ's proposals for decision will be sent to the director of the Division, who Mazda alleges has also likely not handled any disputes as presented in this case since the Motor Vehicle Board disbanded in 2005 and he assumed the duties of the Board (except rulemaking). *See* Act of June 14, 2005, 79th Leg., R.S., ch. 281, Sess. Law Serv. 839; *see also* Tex. Occ. Code Ann. § 2301.005(a).

Rountree replies that this Court should grant Plaintiff's Motion to Stay because (1) Mazda has failed to establish waiver, and (2) the Texas Supreme Court has already decided that the Division has primary jurisdiction. First, Rountree argues that Mazda has failed to offer any evidence of unfair prejudice. Further, Mazda has neither alleged nor set forth any evidence that the discovery already conducted in this case would not be useful before the Division. Rountree notes that the Appendix to Plaintiff's Notice of Protest, filed with the Division on August 31, 2007, is filled largely with documents produced by Mazda through the discovery process in this case. Rountree asserts that these documents will be useful to the Division to determine whether Mazda violated the Texas Occupations Code.

Second, Rountree again states that the Texas Supreme Court has held that the Division has primary jurisdiction over the issue of whether a manufacturer violated Chapter 2301 of the Texas Occupations Code. Rountree asserts that *General Motors* did not render *Butnaru* moot. Rountree argues that *General Motors* merely clarified the application of one sentence of the statute in an attempt to guide the Division in exercising its jurisdiction and then remanded that case back to the Division for it to "determine whether GM unreasonably denied the transfer application." *See General Motors*, 2007 Tex. App. LEXIS 6603, at *17-19. Further, Rountree asserts that Mazda has misstated the holding in *General Motors*. Rountree argues that the *General Motors* court held that the second sentence of the statute provides a bright-line test for a specific factual situation: when the manufacturer has

written, reasonable and uniformly applied standards. *Id.* at *17. Thus, Rountree argues that the Division must first determine whether that situation exists, and if so, whether the manufacturer nevertheless denied an applicant who met those standards. Rountree states that this type of denial would be *per se* unreasonableness. If the manufacturer has no such standards, Rountree asserts that the reasonableness test should be applied by the Division, taking into consideration the factors listed in the statute. Rountree argues that if the Division were to find that Mazda has at least one written, reasonable, and uniformly applied standard, then the *General Motors* case would have no effect on the Division's analysis.

Rountree also asserts that Texas courts have consistently deferred to the Division on the issue of whether to stay or abate lawsuits under primary jurisdiction. Rountree mentions a case, defended by Mazda's counsel in this case, where the district court abated the case deferring to the Division. *See Sonic-Carrollton V, L.P. v. Millennium Jaguar of Texas, Inc.*, 230 S.W.3d 811, 815-16 (Tex. App.—Dallas 2007) (orig. proceeding).

Next, Rountree notes that although the Court of Appeals in *Butnaru II* states that the Texas Supreme Court did not clarify what procedures the Board may use to exercise its jurisdiction, the Court of Appeals in *Butnaru II* went on to state that "the supreme court's directive is clear that resolution of these issues must begin in the

Board." *Butnaru II*, 157 S.W.3d at 149. Rountree also notes that the Court of Appeals in *Butnaru II*, like the court in *General Motors*, remanded the case to the Motor Vehicle Board to give the Board an opportunity to determine whether the manufacturer violated Chapter 2301 of the Texas Occupations Code. *Id.* at 150.

Rountree also asserts that there will now be ALJs with experience handling these types of disputes at the Division because it filed its Protest with the Division on August 31, 2007. Rountree argues that the Texas Supreme Court has already determined that this case does present "highly technical facts." *See Butnaru*, 84 S.W.3d at 208-09. Rountree also argues that litigation expenses that Mazda has incurred to date are irrelevant, unavoidable, and not supported by evidence. Lastly, Rountree asserts that if Mazda cannot prove its affirmative defense of privilege because of its illegal conduct, then neither can the individual defendants, as they would have not have privilege to interfere separate and apart from Mazda.

Mazda replies noting that the Dallas Court of Appeals granted writ of mandamus in the *Millennium* case on the grounds that the district court abused its discretion in abating the case. *See Sonic-Carrollton V, L.P. v. Millennium Jaguar of Texas, Inc.*, 230 S.W.3d 811, 815-16 (Tex. App.—Dallas 2007) (orig. proceeding). Thus, Mazda argues that the *Millennium* case is not an example of a state court properly deferring to the Board. Mazda also replies that Rountree's reliance on *Butnaru* and *Butnaru II* is misplaced. Mazda asserts that *Butnaru* dealt with the

14

narrow issue of whether the right of first refusal violated the Texas Occupations Code. Mazda states that it was noted that the statute was silent on the rights of first refusal. Mazda asserts that this case involves a manufacturer's contractual right to deny transfer of ownership in its franchise, and transfer of ownership is addressed in the Texas Occupations Code. In fact, Mazda points out that in *General Motors*, the Court of Appeals reversed the Division, specifically corrrecting the Division's misinterpretation of the applicable statute. Thus, Mazda argues that the "specialized knowledge" aspect of primary jurisdiction in this case is not supported by *Butnaru* and *Butnaru II.*

Rountree replies that the appellate decision in *Millenium* further supports that *Butnaru* controls this case. In *Millennium*, the Court of Appeals held that the "strong federal policy favoring arbitration preempts state laws that act to limit availability of arbitration." 830 S.W.3d at 814. The Court of Appeals distinguished *Butnaru* "because the supreme court [in *Butnaru*] was not faced with the effect of an arbitration agreement and the FAA on the [Division's] jurisdiction." *Id.* Thus, the Court of Appeals recognized that *Butnaru* was controlling, distinguishing *Butnaru* on the sole ground that federal policy favoring arbitration preempted state law on primary jurisdiction. *Id.* at 815. Rountree notes that there is no arbitration agreement at issue.

Rountree also replies that Mazda's argument that *Butnaru* is not controlling

15

because it only applies to cases involving the exercise of a right of first refusal does not have merit because of Mazda's prior contention that the right of first refusal in its Dealer Agreement gave it a contractual right to interfere with the Stock Agreement.[4] Rountree argues that the *Butnaru* court did not limit its holding to the issue of whether the exercise of a right of first refusal violated the Occupations Code, but required the abatement in all cases falling within the Board's special competence and expertise, and particularly those cases involving disputes between a manufacturer and a dealer when the dealer alleges that the manufacturer violated Chapter 2301 by unreasonably withholding consent to transfer a dealership.

## IV. ANALYSIS

First, the Court finds that Rountree has not waived its right to invoke the primary jurisdiction doctrine. Mazda does not cite any Texas case where a party has actually waived its right to invoke the doctrine. Although Rountree waited one year after filing the lawsuit and three years after Mazda's initial denial to seek administrative relief, Mazda has failed to show prejudice. Rountree has demonstrated that the discovery already conducted in this litigation will be useful to the Division in determining whether Mazda violated the Texas Occupations Code.

Second, although the Fifth Circuit has held that primary jurisdiction is to be

---

[4] Citing Mazda's Motion for Summary Judgment, ¶ 25 (Court Document No. 52) (citing § 6 of the Dealer Agreement and describing that its right of first refusal is "undeniable").

16

applied at the discretion of the trial court, the *Butnaru* Court has held that a trial court is required to abate the lawsuit until the Division has had a reasonable opportunity to determine if a manufacturer violated the Texas Occupations Code by unreasonably withholding consent to transfer a dealership. Even though the Division cannot award monetary damages and even though the *Butnaru* Court did not establish a procedure for the Division to use to exercise its primary jurisdiction, the Supreme Court was clear that the resolution of these issues must begin at the Division. The issue in this case is whether Mazda unreasonably denied Rountree's application, which falls squarely within the *Butnaru* directive. The Court does not find any language in the *Butnaru* opinion that limits the decision to the narrow issue of right of first refusals. The *Butnaru* Court in its holding was specifically discussing cases involving "disputes between a manufacturer and dealer when the dealer alleges that the manufacturer violated section [2301.359] by unreasonably withholding consent to transfer a dealership." *Butnaru*, 84 S.W.3d at 208. Even if the *Butnaru* Court did intend to limit its holding, which this Court does not believe it did, it appears there is a right of refusal at issue in this case because Mazda asserts in its Motion for Summary Judgment that it exercised its right of first refusal to deny a prospective transfer, which was contained in its Dealer Agreement with Beasley-Wilson. Mazda asserts that "[t]his right of first refusal is undeniable, and as explained in *Butnaru I*, has not been recognized as abrogated by the Occupations

17

Code."

Additionally, the *Butnaru* Court has already determined that in these types of cases, technical factual matters require resolution, and there is a need for expert and specialized knowledge of the Division. Thus, Mazda's argument that the Division does not have the special expertise and competence in Code construction issues is without merit. While there may have been personnel changes at the Division since the *Butnaru* opinion, these changes do not modify the opinion. There is no evidence that the Division does not presently have the special expertise and competence in Code construction issues. Mazda's statements regarding the experience of the ALJs and the director of the Division are mere speculation. Additionally, the *General Motors* case is just one example where the Division engaged in statutory-construction error, the Court of Appeals corrected the error, and remanded the case to the Division for a determination of whether the application was unreasonably denied. However, the actions of the Division in this one case cannot overrule or moot the Texas Supreme Court's *Butnaru* opinion regarding the Division's required expert and specialized knowledge in this type of case.[5] Lastly, the Court notes that the *Butnaru* Court held that there is a State interest in uniform interpretation of the Code; thus, there would be great benefit in deferring to the Division's expertise

---

[5] Although argued by the parties, the merits of the *General Motors* case are not relevant to this Court's decision of whether to stay this case and defer to the Division.

because a jury could reach a different result in this factual situation.[6]

Thus, the Court finds that Plaintiff's Motion to Stay should be granted. In light of the foregoing, it is

**ORDERED** that Plaintiff's Motion to Stay (Court Document No. 48) is **GRANTED**. It is further

**ORDERED** that this case is **STAYED** until such time as the Texas Department of Transportation, Motor Vehicle Division has had a reasonable opportunity to exercise its primary jurisdiction in deciding whether Defendant Mazda violated Chapter 2301 of the Texas Occupations Code in rejecting Plaintiff's application to become an authorized Mazda dealer. It is further

**ORDERED** that the parties shall file a status report with the Court every ninety (90) days. The first status report is due ninety (90) from the date of this Order.

**SIGNED** on this 22nd day of October, 2007.

_____
WALTER S. SMITH, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] The parties also argued the *Millenium* case, however, it is not relevant to this Court's decision of whether to stay this case and defer to the Division because there is no arbitration agreement at issue.